UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL CASTRO-SANCHEZ,

                         Plaintiff,

          v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SERVICES,
NEW YORK STATE OFFICE OF MENTAL
HEALTH, JAMES THORPE, HAROLD
HANAMAN, MARK WESLEY, CLIFFORD
GUNSETT and MCKENZIE R. LAMBERT,

                         Defendants.

10-cv-8314 (DLC)(KNF)

**AMENDED COMPLAINT**

**Jury Trial Demanded**

---

Plaintiff Daniel Castro-Sanchez, by his undersigned attorneys, Kent, Beatty & Gordon, LLP, alleges the following for his amended complaint:

## NATURE OF THE ACTION

1. This action arises out of almost a year's worth of physical abuse, denial of medical care, and verbal harassment that Mr. Castro-Sanchez suffered at the hands of a group of corrections officers at New York's Green Haven Correctional Facility. These officers targeted Castro-Sanchez for abuse because he is mentally disabled and because he is Puerto Rican and speaks very little English. The agency defendants, moreover, failed to train and supervise the officers in the handling of mentally disabled inmates, and were deliberately indifferent to the acts of discrimination being committed by the officers. Accordingly, plaintiff seeks injunctive relief and damages against the agency defendants under Title II of the Americans with Disabilities Act, § 504 of the Rehabilitation Act, and Title VI of the Civil Rights Act of 1964, and damages against the individual defendants under 42 U.S.C. § 1983. Finally, plaintiff also brings a claim

under the Religious Land Use and Institutionalized Persons Act against one of the corrections officers who, as part of this campaign of abuse and harassment of plaintiff, repeatedly confiscated plaintiff's kosher meals, forcing him to eat non-kosher food in violation of his religious beliefs.

## JURISDICTION AND VENUE

2. All of plaintiff's claims for relief arise under federal civil rights statutes. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

## THE PARTIES

4. Plaintiff Daniel Castro-Sanchez was born in Puerto Rico in 1961, and moved to New York to live with his family in or around 2002. Since 2004, he has been an inmate in the custody of the State of New York. Mr. Castro-Sanchez' primary language is Spanish; he understands very little English. He is also Jewish and maintains a kosher diet.

5. Mr. Castro-Sanchez suffers from severe physical and mental disabilities. He is floridly schizophrenic, and also has been diagnosed with bipolar disorder, unipolar disorder and depression. He hears voices in his head, and has frequently attempted to harm himself, including several suicide attempts. His physical ailments include the human immunodeficiency virus, an enlarged prostate, and chronic and severe stomach pain.

6. Defendant New York State Department of Corrections and Community Supervision ("DOCCS") is the successor agency created by the merger of the Department of Correctional Services and the Division of Parole. At all relevant times, it had custody of plaintiff, and was the employer of each of the corrections officers discussed herein.

7. Defendant New York State Office of Mental Health ("OMH") shares joint responsibility with DOCCS for the treatment and supervision of mental health inmates. Upon information and belief, at all relevant times, it operated the mental health programs at Green Haven described herein.

8. Defendant James Thorpe is a corrections officer who, at all relevant times, was assigned to plaintiff's cell block at Green Haven.

9. Defendant Harold Hanaman is a corrections officer who, at all relevant times, was assigned to plaintiff's cell block at Green Haven.

10. Defendant Mark Wesley is a corrections officer who, at all relevant times, was assigned to plaintiff's cell block at Green Haven.

11. Defendant Clifford Gunsett is a corrections officer who, at all relevant times, was assigned to plaintiff's cell block at Green Haven.

12. Defendant McKenzie R. Lambert is a corrections officer who, at all relevant times, was assigned to plaintiff's cell block at Green Haven.

## FACTS COMMON TO MULTIPLE CLAIMS FOR RELIEF

**Plaintiff is sexually assaulted by Thorpe on January 30, 2010**

13. In the afternoon of January 30, 2010, as Mr. Castro-Sanchez was about to walk to the yard for recreation, Thorpe ordered him to wait by his cell while the other inmates proceeded to the yard. Thorpe then commanded plaintiff to empty his pockets and place his hands on the wall.

14. Plaintiff complied with Thorpe's order, and while plaintiff faced the wall Thorpe pulled down plaintiff's pants and groped his buttocks. As he groped plaintiff, Thorpe mocked plaintiff with Hanaman, who was present throughout this incident.

15. During this assault on plaintiff, Thorpe laughed several times and repeatedly mentioned another inmate, Franco Santos, who, upon information and belief, had a history of conflict with Thorpe. Because Thorpe was speaking in English, plaintiff could not understand most of what Thorpe was saying about Santos, but plaintiff heard Thorpe use the term "Puerto Rican motherfucker."

16. Thorpe's groping of plaintiff was not pursuant to a routine random strip search. Rather, the groping was performed maliciously and sadistically in order to harass and injure plaintiff, and was unrelated to any legitimate prison needs.

17. Indeed, upon information and belief, Thorpe has never even claimed that his assault on plaintiff was pursuant to a routine strip search of plaintiff. On the contrary, in connection with the investigation of plaintiff's grievance of this matter, Thorpe submitted a written statement expressly admitting that he had *not* conducted a "pat frisk" of plaintiff.

18. Moreover, upon completing his assault on plaintiff, Thorpe and Hanaman confiscated plaintiff's cigarettes and a lighter, but did not provide plaintiff with the required receipt for the property. Nor, upon information and belief, did they otherwise report the confiscation of these items.

19. Upon information and belief, Thorpe and Hanaman targeted plaintiff because they believed his mental disabilities and inability to speak English would make it virtually impossible for plaintiff to effectively report their actions.

**After filing a grievance, plaintiff is harassed and denied medical care**

20.     On or about February 2, 2010, plaintiff filed a grievance complaining of Thorpe's assault of January 30.  Immediately after plaintiff filed the grievance, a number of incidents occurred that involved the corrections officers in plaintiff's cell block denying plaintiff necessary medical care (both physical and psychiatric), as well as other related abuses.

21.     First, on February 3, while Lambert was letting inmates out of their cells for medication runs, Lambert skipped plaintiff's cell despite the fact that plaintiff was scheduled for a medication run that day, and had placed his name on the list.  Alarmed, Plaintiff immediately alerted a bilingual fellow inmate, Billy Rivera, that plaintiff required a medication run because he needed his pain medication for his chronic stomach pain.  Upon information and belief, Rivera relayed to Lambert plaintiff's serious need for his pain medication, but Lambert still refused, claiming that plaintiff's name was not on the list for a medication run.  Consequently, plaintiff did not receive his medication, causing him to experience significantly worse physical pain than he would have if he had received his medication.

22.     Next, on February 16, plaintiff began to feel unwell while attending a regular mental health program, and so informed a staff member known to plaintiff as "Ms. Giacolone." Ms. Giacolone, in turn, notified a corrections officer, who gave plaintiff an emergency pass for the medical clinic.  At the clinic, a doctor gave plaintiff a permit to remain in his cell on "medical keeplock."  An inmate on medical keeplock may choose to convalesce in his cell rather than attend programs and other prison activities.

23.     When plaintiff returned to his cell block, however, the officer on duty recorded plaintiff as being on regular, as opposed to medical, keeplock.  Regular keeplock is a form of

punitive segregation in which the inmate is not permitted to leave his cell.  As a result, later that same day Wesley refused to let plaintiff out of his cell for a scheduled visit to the Psychological Services Unit ("PSU").  Plaintiff appealed to Hanaman, but Hanaman also refused to let plaintiff out of his cell.

24. In addition, plaintiff was also denied access to the commissary and denied his medication runs on February 16 and 17, ostensibly due to the erroneously recorded keeplock status.  As a result, plaintiff was unable to take his medication for his stomach pain, and suffered significantly more pain than he would have with the medication.

25. The next incident occurred on March 11, 2010.  For several days prior, bilingual inmates had conveyed warnings to plaintiff that they had overheard Thorpe, Wesley, Hanaman and other officers discussing plaintiff and threatening to physically harm him.  On the morning of March 11, Thorpe followed plaintiff as he returned to his cell from a medication run.  When they arrived at the cell, Thorpe clenched his fist and began speaking to plaintiff in English in an aggressive manner.  Though plaintiff could not understand most of Thorpe's statements, plaintiff heard Thorpe refer to grievances and to Santos Franco.  Thorpe then used the words "Puerto Rican" and "motherfucker" and grabbed his crotch, telling plaintiff, "for you."

26. Upon information and belief, later in the day on March 11, Thorpe and Wesley were overheard by other inmates to say they were going to make plaintiff "pay" for filing grievances, and referred to plaintiff as "that damn Puerto Rican."

27. During an inmate head count also on March 11, plaintiff asked Lambert whether he had a PSU call-out scheduled.  Upon information and belief, plaintiff did have a call-out scheduled, as he had been advised by Ms. Giacolone, but Lambert falsely claimed that plaintiff

was not scheduled for a call-out; and when Ms. Giacolone called the officers on plaintiff's cell block to have him produced at the PSU, the officers falsely told her that plaintiff had declined to attend the call-out. This incident further aggravated the symptoms of plaintiff's mental disabilities, causing him to experience increased anxiety, depression, and the desire to harm himself.

**Plaintiff is assaulted—again—on June 18, 2010**

28. On the morning of June 18, 2010, Wesley intercepted plaintiff while he was returning to his cell from a medication run. Wesley then frisked him. After completing the frisk, and finding no contraband, Wesley told plaintiff to turn around, grabbed him by the neck, and pressed his face against the wall.

29. While Wesley was holding plaintiff against the wall, Hanaman approached and began speaking aggressively to plaintiff in English. Hanaman told plaintiff that he should not file grievances, and then punched plaintiff in the face, stating, "that's for all the grievances." Plaintiff suffered substantial pain and bruising as a result of Hanaman's assault, and was forced to seek treatment from the prison medical clinic.

**Plaintiff is further threatened by Thorpe on June 28, 2010**

30. Ten days after the June 18 assault by Hanaman, at noon on June 28 to be precise, plaintiff returned to his cell from the medical clinic and gave his pass to Thorpe. Thorpe then mocked plaintiff and instructed him to wait until the most of the other inmates in the cell block left to attend programs. Once they were alone, Thorpe's demeanor became extremely hostile, and he proceeded to berate plaintiff about filing grievances, though he spoke in English so that plaintiff could not understand most of what he was saying.

31. That evening, another inmate, Lee Hernandez, approached plaintiff in the yard and said he had overheard Thorpe and other officers discussing plaintiff. Hernandez reported that Thorpe and other officers were conspiring to make plaintiff "pay" for filing grievances against them, and they planned to "eliminate" plaintiff by planting a knife and drugs in his cell.

32. Thorpe's actions aggravated plaintiff's mental health problems and he began to experience extreme, uncontrollable nervous attacks.

**Plaintiff's kosher meals are confiscated by Thorpe**

33. On or about July 31, 2010, Thorpe began to confiscate plaintiff's kosher meals without justification. Because plaintiff is Jewish, he receives kosher meals delivered to his cell by another inmate whose job it is to make such deliveries. When plaintiff stopped receiving his meals regularly, this inmate informed plaintiff that Thorpe had taken them.

34. Thorpe's confiscation of plaintiff's kosher meals continued for approximately two to three months, with varying frequencies. During one particularly bad week, Thorpe confiscated every single one of plaintiff's meals, and plaintiff was forced to subsist by purchasing soup from the commissary. The soup was not kosher.

**Plaintiff harms himself after being threatened by Gunsett on August 7, 2010**

35. On August 7, 2010, Gunsett approached plaintiff in his cell and began to threaten retaliation against plaintiff if he did not stop filing grievances. Gunsett's threats were the straw that broke the camel's back. Overwhelmingly distraught by the abuse he had been receiving from the officers, that day plaintiff used the sharp edge of a can top to seriously lacerate his left forearm in three places. Plaintiff was transported to the emergency department of Putnam Hospital Center, where he was treated and received a total of fifteen staples in his forearm.

## FIRST CLAIM FOR RELIEF
(Title II of the Americans with Disabilities Act)
(Against DOCCS and OMH)

36.	Plaintiff incorporates by reference the allegations of paragraphs 1 through 35.

37.	Plaintiff is a qualified individual with physical and mental disabilities within the meaning of 42 U.S.C. § 12131(2).

38.	Both DOCCS and OMH are public entities within the meaning of 42 U.S.C. § 12131(1).

39.	DOCCS and OMH have discriminated against plaintiff by reason of his disability in violation of Title II of the Americans with Disabilities Act.  These agencies have failed to train and supervise corrections officers dealing with mentally disabled inmates, and have allowed the officers to victimize plaintiff because of his disabilities.  Plaintiff has been physically assaulted by the officers; he has been verbally harassed in a manner that the officers knew or should have known would be especially traumatic for a person with plaintiff's disabilities; and he has been excluded from participation in or denied the benefit of services, programs or benefits available to other inmates, including access to medical and psychiatric care, recreation and the prison commissary.

## SECOND CLAIM FOR RELIEF
(Section 504 of the Rehabilitation Act)
(Against DOCCS and OMH)

40.	Plaintiff incorporates by reference the allegations of paragraphs 1 through 39.

41.	Plaintiff, a schizophrenic, is an individual with a disability within the meaning of 29 U.S.C. § 705(20).

42.	DOCCS and OMH receive federal financial assistance.

43.     DOCCS and OMH have discriminated against plaintiff by reason of his disability in violation of § 504 of the Rehabilitation Act.  These agencies have failed to train and supervise corrections officers dealing with mentally disabled inmates, and have allowed the officers to victimize plaintiff because of his disabilities.  Plaintiff has been physically assaulted by the officers; he has been verbally harassed in a manner that the officers knew or should have known would be especially traumatic for a person with plaintiff's disabilities; and he has been excluded from participation in or denied the benefit of services, programs or benefits available to other inmates, including access to medical and psychiatric care, recreation and the prison commissary.

**THIRD CLAIM FOR RELIEF**
(Title VI of Civil Rights Act of 1964)
(Against DOCCS and OMH)

44.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 43.

45.     The corrections officers described in this complaint have intentionally discriminated against plaintiff by excluding him from participation in, denying him the benefits of, and subjecting him to discrimination on the basis of his race, ethnicity and national origin in violation of Title VI of the Civil Rights Act of 1964.

46.     DOCCS and OMH had notice of, and were deliberately indifferent to, the discriminatory actions of the corrections officer defendants.

47.     DOCCS and OMH receive federal financial assistance.

**FOURTH CLAIM FOR RELIEF**
(42 U.S.C. § 1983 — Eighth and Fourteenth Amendments)
(Against Wesley and Hanaman arising from June 18 assault)

48.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 47.

49. The June 18, 2010 assault by Wesley and Hanaman violated plaintiff's clearly established constitutional right not to be subjected to cruel and unusual punishment.

50. Further, Wesley and Hanaman's assault was motivated by plaintiff's disability and the fact that he is Puerto Rican, in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

### FIFTH CLAIM FOR RELIEF
(42 U.S.C. § 1983 — First, Eighth and Fourteenth Amendments)
(Against Thorpe arising from meal confiscations)

51. Plaintiff incorporates by reference the allegations of paragraphs 1 through 50.

52. From on or about July 31, 2010, until in or around September 2010, Thorpe confiscated plaintiff's kosher meals in violation of plaintiff's clearly established right not to be subjected to cruel and unusual punishment.

53. Thorpe's confiscation of plaintiff's meals was motivated by plaintiff's disability and the fact that he is Puerto Rican, in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

54. Thorpe's confiscation of plaintiff's kosher meals also violated plaintiff's rights under the Free Exercise Clause of the First Amendment to the Constitution. Thorpe's actions substantially burdened plaintiff's sincerely held religious beliefs, and were not related to any legitimate penological interest.

### SIXTH CLAIM FOR RELIEF
(Religious Land Use and Institutionalized Persons Act)
(Against Thorpe arising from meal confiscations)

55. Plaintiff incorporates by reference the allegations of paragraphs 1 through 54.

56. Plaintiff is Jewish. He has a sincerely held belief that the exercise of his Jewish religious beliefs requires him to maintain a kosher diet.

57. Thorpe's confiscation of plaintiff's kosher meals substantially burdened his religious exercise.

58. Thorpe's confiscation of plaintiff's kosher meals was unrelated to any governmental interest.

59. Thorpe acted under color of state law and therefore falls within the definition of "government" in 42 U.S.C. § 2000cc-5(4)(A)(iii).

60. DOCCS and OMH receive federal financial assistance.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands trial by jury of all the issues so triable.

## REQUEST FOR RELIEF

**WHEREFORE**, plaintiff Daniel Castro-Sanchez prays for the entry of judgment in his favor awarding the following relief:

(A) On the first claim for relief, injunctive relief, actual and punitive damages in an amount to be determined at trial, plus attorneys' fees and expenses;

(B) On the second claim for relief, declaratory and injunctive relief, actual damages in an amount to be determined at trial, plus attorneys' fees and expenses;

(C) On the third claim for relief, declaratory and injunctive relief, actual damages in an amount to be determined at trial, plus attorneys' fees and expenses;

(D) On the fourth claim for relief, actual and punitive damages in an amount to be determined at trial, plus attorneys' fees and expenses;

(E) On the fifth claim for relief, actual and punitive damages in an amount to be determined at trial, plus attorneys' fees and expenses;

(F) On the sixth claim for relief, declaratory relief, actual and punitive damages in an amount to be determined at trial, plus attorneys' fees and expenses; and

(G) On all claims for relief, any additional relief that the Court deems proper.

Dated: New York, New York
October 19, 2012

KENT, BEATTY & GORDON, LLP

*/s/ Joshua B. Katz*
Joshua B. Katz
425 Park Avenue, The Penthouse
New York, New York 10022
(212) 421- 4300
jbk@kbg-law.com

*Attorneys for Plaintiff*
*Daniel Castro-Sanchez*